Case: 23-1820    Document: 11    Page: 1    Date Filed: 07/10/2023

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 23-1820

ANNA RUSSO and TORRY ARGIRO,
**Appellants,**
vs.
JOSHUA LAMANCUSA, individually and in
His capacity as LAWRENCE COUNTY
DISTRICT ATTORNEY; and RICHARD RYHAL,
individually and in his capacity as
SPECIAL INVESTIGATION UNIT DETECTIVE,
**Appellees.**

**APPELLANTS BRIEF
AND
APPENDIX, VOLUME I - PAGES 001 - 032**

**APPEAL FROM THE MEMORANDUM OPINION AND ORDER OF JUDGE
ROBERT J. COLVILLE, ENTERED ON APRIL 3, 2023 GRANTING
DEFENDANTS' MOTION TO DISMISS AND SUBSEQUENT ORDER
DISMISSING THE CASE WITH PREJUDICE**

Alexander H. Lindsay, Jr.
Pa. I.D. No.: 15088

THE LINDSAY LAW FIRM, P.C.
110 East Diamond Street, Suite 301
Butler, PA 16001
(724) 282-6600

# TABLE OF CONTENTS

Table of Contents ...................................................................... i

Table of Citations .................................................................... ii

I.  Statement of Subject Matter & Appellate Jurisdiction .................................. 1

II. Statement of Issues ................................................................ 2

III. Statement of the Case ............................................................. 3

IV. Statement of Facts ................................................................. 5

V.  Statement of Related Cases and Proceedings.......................................... 18

VI. Statement of the Standard or Scope of Review ....................................... 18

VII. Summary of the Argument .......................................................... 19

VIII. Argument ........................................................................ 20

IX.  Conclusion........................................................................ 30

X.   Certificate of Compliance ........................................................ 31

XI. Certificate of Compliance with Type-Volume Limit, Typeface Requirements,

and Type-Style Requirements ............................................................ 32

 XII. Certificate of Bar Membership ................................................... 33

XIII. Certificate of Identical Compliance of Briefs .................................... 33

XIV. Certificate of Virus Check ....................................................... 34

Appendix Volume I ...................................................................

Certificate of Service................................................................ Last

Case: 23-1820   Document: 11   Page: 2   Date Filed: 07/10/2023

# TABLE OF CITATIONS

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) .......................................................... 18
*Banks v. Wolk*, 918 F.2d 418, 419, 420 (3d Cir.1990) ................................ 19,20, 27
*H.J. Inc. v. Northwerstern Bell Telephone Company*
    492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) .......................... 19, 20
*Swistock v. Jones*, 884 F.2d 755 (1989) ........................................................... 19,21
*Twombley v. Bell Atlantic Corp.*, 425 F.3d 99 (2nd Cir. 2005) ............................ 18

Constitutions, Statutes and Rules

18 U.S.C. §1962(c) ................................................................................................ 5,29
28 U.S.C. §1291 ....................................................................................................... 1
28 U.S.C. §1331 ....................................................................................................... 1
42 U.S.C. §1983 ...................................................................................................... 29
Fed R. Civ. P. 12(b)(6) ................................................................................... 3, 18, 30
Fed. R.Civ. P. 12(f) .................................................................................................. 3

Case: 23-1820    Document: 11    Page: 3    Date Filed: 07/10/2023

# STATEMENT OF SUBJECT MATTER & APPELLATE JURISDICTION

This Court has subject matter jurisdiction to hear this appeal pursuant to the provisions of 28 U.S.C. §1331, and appellate jurisdiction pursuant to the provisions of 28 U.S.C. §1291.

This is an appeal of a final order of the U.S. District Court for the Western District of Pennsylvania. This is an appeal of the Memorandum Opinion and Order entered on April 3, 2023 granting Defendants' Motion to Dismiss and subsequent Judgment Order marking the case closed. Appeal Number 23-1820 was filed on May 1, 2023.

## STATEMENT OF ISSUE

A.     **WHETHER THE DISTRICT COURT ERRED IN DISMISSING THE PLAINTIFFS' RICO CLAIM HOLDING THAT THE PLAINTIFFS FAILED TO PLEAD A PATTERN OF RACKETEERING ACTIVITY.**

*SUGGESTED ANSWER: IN THE AFFIRMATIVE*

## STATEMENT OF THE CASE

The Plaintiffs filed a Complaint against the Defendant Lamancusa pursuant to 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act (RICO), in the Court of Common Pleas of Lawrence County on November 29, 2021. The Defendant Lamancusa filed a Notice of Removal to the United States District Court for the Western District of Pennsylvania on December 29, 2021. The Defendant Lamancusa then filed a Motion to Dismiss and Motion to Strike on February 18, 2022. The Plaintiff responded by filing the First Amended Complaint against the Defendant Lamancusa on March 11, 2022. The Defendant Lamancusa then filed a Motion to Dismiss and Motion to Strike the First Amended Complaint resulting in the Plaintiffs filing their Second Amended Complaint, with leave from Court, on July 15, 2022 against both the Defendant Lamancusa and the Defendant Ryhal.

Defendant Ryhal filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 19, 2022 and a Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f) with brief in support. The Plaintiffs filed their response on December 16, 2022. A reply brief was filed by the Defendant Ryhal on January 6, 2023.

On April 3, 2023, the District Court per the Honorable Robert J. Colville granted the Defendants' Motion to Dismiss with prejudice. An appeal was filed by the Plaintiffs on May 1, 2023.

## STATEMENT OF FACTS

The Plaintiffs' Second Amended Complaint, which is the subject of this appeal, is an action pursuant to 18 U.S.C. § 1962(c) (RICO). It alleged that the District Attorney of Lawrence County, Pennsylvania, the Defendant Joshua Lamancusa, operated a racketeering enterprise, namely the Special Investigation Unit of the Lawrence County Drug Task Force (hereinafter "SIU") which engaged in a pattern of racketeering activity including extortion, Hobbs extortion, wire fraud and interstate transportation in aid of racketeering, interfering with interstate commerce and therefore unlawfully deprived the Plaintiffs Anna Russo, Torry Argiro and others of property in violation of their civil and constitutional rights. (Appendix Volume II, pages 40 and 41 ¶1).

The Second Amended Complaint alleges that the Defendant Lamancusa was involved in a scheme, using the enterprise, the SIU, to defraud and extort individuals in Western Pennsylvania by threatening to file, and filing, criminal charges against them, and leveraging the threat of criminal charges to extract money, property and sexual favors for himself. (Appendix Volume II, page 4 ¶14).

A. **The Russo Matter**

Paragraphs 29 through 89 of the Second Amended Complaint set forth the allegations involving the Plaintiff Anna Russo and her son Robert Luptak. (Appendix Volume II, pages 45-55) which are summarized as follows.

While the allegations in the Second Amended Complaint show Anna Russo as one of the victims of the Defendant Lamancusa's extortion schemes, her son, Robert Luptak, was an even greater victim, serving a sentence of 11½ to 23 years in state prison because he refused to cooperate with Defendant Lamancusa and plant drugs or contraband on others so that it would appear the drugs were in the possession of the targeted individuals.

Anna Russo, one of the Plaintiffs herein, the mother of Robert Luptak owned ACRO Motors in Edinburg, Pennsylvania, an automobile dealership dealing in automobiles which moved or had moved in interstate commerce. Robert Luptak was the manager of ACRO Motors and as such ran the business. Robert Luptak also worked as a drug counselor for drug addicts and was successful in getting many drug addicts 100% clean from their addictions.

Prior to October 23, 2014, a confidential informant engaged by the Defendant Lamancusa or the SIU placed illegal drugs in a 1978 Buick Electra 225 automobile, believing that Robert Luptak owned the vehicle. In fact, the aforesaid mentioned

6

1978 Buick Electra 225 automobile was owned by the Plaintiff Russo and was being stored by Russo for wintertime at 214 West Winter Avenue, New Castle, PA. The Defendant and the SIU confiscated the 1978 Buick Electra 225 automobile without a search warrant procured for the location in which the automobile was located. The seized 1978 Buick Electra 225 automobile was never returned to the Plaintiff Russo.

On October 23, 2014, Robert Luptak was staying at a property which was the property of the Plaintiff Russo's parents prior to their death. On that date it was Robert Luptak's responsibility to care for the property and all of the Russo family heirlooms including valuable articles of property, cash and collectable coins. On that date, a search was conducted on the property owned by the Plaintiff Russo and various items were seized regardless of who owned them or whether they had any connection to any allegations of drug charges. The seizure of property on October 23, 2014 including items owned by the Plaintiff Russo's granddaughters including a 3-wheeler, iPad, peddle bikes and a child's piggy bank containing money that was being saved for several years by the granddaughter.

The Defendant Lamancuso was at the scene assisting in this search. On October 23, 2014, Robert Luptak was arrested on drug charges by the New Castle Police Department. A search was conducted of Robert Luptak's home and many valuable articles of property were seized by police officers who were part of the Enterprise.

Mr. Luptak was kept in a holding cell for 4 hours before Officer Costa, then a member of the SIU brought Defendant District Attorney Lamancusa to speak with him.  Prior to questioning Robert Luptak while in custody,  was not given his Miranda warnings until after being questioned by the Defendant Lamancusa. After hours of questioning from Defendant Lamancusa and officers participating in SIU, Luptak made no admissions.

In spite of the fact that Luptak never admitted to any wrongdoing, police officers testified falsely concerning the answers given.   In the course of the custodial interview, the Defendant Lamancusa referenced "stolen tools at the car lot of ACRO Motors".  Defendant Lamancusa asked Robert Luptak if he had a problem letting him "take a look around the car lot for stolen items".  Luptak said that he did not have the keys to get into the lot but members of the SIU working with Defendant Lamancusa responded that if Luptak refused to give his consent to a search of the car lot he would, "get a f---ing backhoe and knock down the fence and doors" once they obtained a search warrant.

Attempting to avoid an escalation of the threats against him and the Plaintiff Russo's belongings, Robert Luptak, knowing he had no authority to do so without the consent of the Plaintiff Russo, signed a form that gave consent for Defendant Lamancusa to search the car lot.   Members of the SIU executed a search of ACRO Motors on October 23, 2014 without talking to the Plaintiff Russo prior to their

8

arrival at the car lot. Defendant Lamancusa never produced a search warrant for the Plaintiff Russo for October 23, 2014.

Following the search the Defendant Lamancusa, in his official capacity, using the SIU, seized numerous items including approximately fifteen vehicles, $15,498 in bank wraps, a large amount of jewelry valued at approximately up to $100,000, Seven motorcycles and various other items of property belonging to ACRO Motors and Plaintiff Russo. The vehicles seized by Defendant Lamancusa did not belong to Mr. Luptak and were not implicated in any drug investigation.

Defendant Lamancasa was ordered by Common Pleas Judge, the Honorable Dominick Motto to produced evidence for these actions but none was produced.

Instead, at a meeting with Luptak, Defendant Lamancusa stated, "I have a proposition for you. What if I made all charges disappear like they never happened? Would you like that? See I'm the guy that can make everything disappear with the push of a pen. I will do this for you if you just let me keep everything we confiscated. Why don't you jump onboard so I can welcome you to the family. This is what we do."

Defendant Lamancusa explained that he wanted Luptak to plant drugs or other contraband so that they would appear that the drugs were in the possession of the targeted individuals; to set somebody up, with a lot of assets, "not someone on the corner selling $20 rocks. We want the big guys with wealth." While in the

Defendant Lamancusa's presence, members of the SIU working under him stated that they wanted Michael Monsour, the owner of a very large car lot, very bad and Brian Whiting as people he wanted Luptak to "set up." Luptak declined to participate in Defendant Lamancusa's scheme stating, "How can I set someone up if they aren't doing anything illegal?" The individual speaking to him in front of the Defendant Lamancusa said, "You let us worry about that."

Shortly before Luptak's trial began on April 17, 2017, Luptak who was then represented by counsel, met alone with Defendant Lamancusa in the Defendant Lamancusa office. Defendant Lamancusa stated, "I will give you one week to decide what you want to do" as he handed Luptak his card with his direct dial number on it stated, "If I don't hear from you I will take that as a no and then I will show you what will happen at trial." Luptak did not take Defendant Lamancusa's offer, the case proceeded to trial, where he was wrongfully convicted and sentenced to 11 ½ to 23 years in prison.

B. **The Bryan Whiting Matter**

Bryan Whiting was identified in Paragraph 68 of the Second Amended Complaint as one of the individuals Defendant Lamancusa and the SIU wanted Luptak to "set up". (Appendix Volume II, pages 52).

Paragraphs 90 through 148 of the Second Amended Complaint set forth the allegations involving Mr. Whiting. (Appendix Volume II, pages 55-63). A summary of those allegations is as follows.

Bryan Whiting owned and operated a variety of businesses in Lawrence County, including a construction business, a long term stay hotel, and a roll-off business. On November 18, 2015, after a traumatic brain injury in a car accident, Bryan Whiting decided to sell fifty percent of his roll-off business to businessmen James Mims and Allen Porter. James Mims is a personal friend of Defendant Lamancusa.

In March of 2017, District Attorney Lamancusa held a meeting in his office with Mr. Mims, Mr. Porter, Anthony Carbone, Bryan Whiting, and Mr. Whiting's then attorney—Jason Medure. At that meeting, Mr. Lamancusa accused Whiting of stealing money from the company and indicated that a large stack of papers on the corner of his desk proved that Whiting had stolen money. Defendant Lamancusa told Whiting that if he agreed to sell additional portions of his business and agreed to become a 1/3 partner with Mr. Mims and Mr. Porter that Mr. Lamancusa would shred the papers and not charge him.

Whiting ultimately agreed to transfer a portion of his stock to Mims and Porter. Whiting then transferred his remaining shares to his wife, who became a minority shareholder. From the period in which she became a partner, Mr. Mims

and Mr. Porter threatened to have charges filed against Mr. Whiting and that he would go to jail if she refused to sell them her shares.

As stated, Mr. Whiting was the owner of Hudson Suites Extended Stay, an extended stay hotel, located at 2202 West State Street, New Castle, PA 16101. On September 13, 2017, the Lawrence County Drug Task Force conducted a search at Hudson Suites Extended Stay. At 10:58 a.m., two members of the SIU, Costa and Bouye informed Mr. Whiting that Mr. Lamancusa instructed them that Mr. Whiting was to be placed under arrest and transported to the police station where Lamancusa would speak with him.

Mr. Lamancusa arrived at the police station and woke up Mr. Whiting and began to yell at Mr. Whiting, saying that he did not know what Mr. Whiting was up to or who he thought he was, but that the ball was in Mr. Lamancusa's court and that Mr. Lamancusa was protected and that Mr. Whiting could call any lawyer from New Castle to Pittsburgh and that if Mr. Whiting cooperates that he would be able to go home but if not that he would go to jail. Subsequently, Mr. Whiting was interrogated by SIU officers Chris Bouye and Tommy Costa.

Following the September arrest, tired of Mims' and Porter's threats, fearful of losing her teaching job, and her husband being harassed and the continued threats of potential criminal action being brought against him, Mrs. Whiting, agreed to sell her portion of the roll-off company. Mrs. Whiting sold the remaining

12

portion of the roll-off company to Defendants Mims and Porter for only $10,000, a fraction of its value. Mrs. Whiting previously had requested that she be paid $165,000; however, due to the constant threats against her husband, she acquiesced to sell for only $10,000.

### C.    **The Argiro Matter**

Torry Argiro's involvement with the Defendant Lamancusa and the SUI began in August of 2019. Paragraphs 150 through 188 of the Second Amended Complaint set forth the allegations involving Mr. Argiro. (Appendix Volume II, pages 63-67). A summary of those allegations is as follows.

It is alleged in the Second Amended Complaint that in August of 2019 Plaintiff Argiro posted several Facebook posts alleging that Lamancusa was involved in public corruption. He continued to post these allegations on August 28 and 29, 2019. One day later, on August 30, 2019 Argiro was arrested at the New Castle Walmart when several police officers surrounded his vehicle. His girlfriend at the time was a drug dealer known as Cassandra Welsh. Upon information and belief, Welsh called 911 while Argiro was inside of the New Castle Walmart purchasing a cell phone for Welsh. Welsh alleged to the 911 operator that Argiro assaulted her, which was not true. Argiro, after he was arrested was taken to the Union Township Police office.

Argiro was questioned about powder coat paint which was in his vehicle at the time. Argiro used powder coat paint for his job at the time for painting motorcycle parts. The arresting officers indicated they believed the powder coat paint to be some type of illegal narcotics. He was also questioned about whether or not he was a drug user or dealer. Argiro admitted that he was a drug user but stated that he was not a drug dealer. He was then asked if he knew any drug dealers and Argiro stated that Josh Lamancusa was a drug dealer. The arresting officer, Wickline asked Argiro to write names of drug dealers on a statement to provide to the police. Argiro wrote Josh Lamancusa's name down on the written statement that Argiro provided at the interrogation. The reason Argiro wrote Lamancusa's name was that he witnessed Lamancusa at a drug dealer's home during a drug transaction.

Three days later, the police informed Argiro that he could pick up his Jeep Wrangler because no narcotics were present in the vehicle. Upon arriving at the Union Township Police Barracks, Argiro was apprehended by Defendant Richard Ryhal. Defendant Ryhal read Argiro his Miranda rights and informed him that the powder coat paint tested positive for narcotics. Knowing that the paint was not narcotics, Argiro replied "F_ _ _ you, I want an attorney and you can take me to jail." The arresting officer Wickline asked Defendant Ryhal what he should call the black paint, and Ryhal responded "just say its heroin to spice it up." Argiro was

taken into custody and remained in custody until December 22, 2019 when he was released on bond and put on house arrest.

Argiro remained on house arrest until March 8, 2021. Being on house arrest for that extended period of time ruined his credit score. He was unable to work full time and was financially destitute. Without any other options for income, threats of additional charges against Argiro, and despite the lack of evidence against him, he felt forced to take a plea by the actions taken by Josh Lamancusa and the officers he employed. Since that time, Argiro has been harassed by Richard Ryhal. Appendix It is alleged in the Second Amended Complaint than an associate of Lamancusa and an ex-corrections officer called Argiro and informed him that if he pursued his allegations of harassment against Richard Ryhal that he would kill Argiro's girlfriend in front of him and then kill Argiro himself.

D. **The Foley Matter**

Paragraphs 189 through 223 of the Second Amended Complaint set forth the allegations involving Mr. Whiting. (Appendix Volume II, pages 67-71). A summary of those allegations is as follows.

The Second Amended Complaint alleged that in November of 2013, Taylor Foley, a seventeen years old girl, witnessed a Mr. Platt shoot a Mr. Hogue in an apartment that she was in with her son. Three days after the shooting, Ellwood city police asked Foley to come into the police station to give a statement where they

proceeded to beat her. Foley was charged with several crimes and taken to a juvenile facility. While in the juvenile facility, Foley's mother informed her that Lawrence County Children and Youth Service had taken her child. At Foley's preliminary hearing, a Children and Youth official told her she would get her son back as soon as she testified against Platt and completed all of their programs.

Foley completed all of the Children and Youth requirements and testified against Mr. Platt at his preliminary hearing in December 2013. After being released from the juvenile facility, Foley attended a court proceeding and District Attorney Lamancusa brought her into his office. He there informed her that if she worked for him as a confidential informant she would get her son back sooner. While in his office, Defendant Lamancusa then began to tell Foley, then 17, that he always liked her and if she did a favor, he would do a favor for her. Foley believed that Lamancusa was attempting to extort sexual favors in addition to working as a CI. She informed him that she was uninterested and he said, "We will see about that." At that point, he got up and put his hand in Taylor F.'s hair and ran his hand all the way down her back to her buttocks before allowing her to leave.

District Attorney Lamancusa became more brazen knowing that Foley was desperate to get her son back. He began to call Foley's cell phone wanting to meet with her, and promising her the return of her son and a good future.

The Second Amended Complaint alleges that in August 2015, Foley received text messages from Lamancusa that if she did not cooperate with him he would make sure she would go to prison and never see her son again. Lamancusa reiterated that if she did him a favor, he would do one for her. In order to placate Defendant Lamancusa, Foley agreed to do him a "favor" although she had no intention of doing so. District Attorney Lamancusa then dropped all of Foley's drug charges down to disorderly conduct, and arranged for early termination of her probation. He also offered to expunge her juvenile record.

Foley did not render any sexual favors onto Lamancusa. He then became angry and told Taylor F. that she would have to leave the state because he wanted sex in return and did not get it in exchange for getting her off of probation. At 2:00 a.m. in February 2017, Defendant Lamancusa arrived at Foley's parent's house in a black SUV with tinted windows, walked into her house without permission, grabbed her, and started to kiss her neck all the way down to her inner thigh. Defendant Lamancusa then made Foley delete messages and also threatened to refile charges if she did not stage messages and act interested because he did not trust her.

In or around June of 2016, Mr. Platt's murder trial occurred and Foley cooperated and testified. Almost immediately after, her son was returned to her.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

There are no related cases or proceedings.


## STATEMENT OF THE STANDARD OR SCOPE OF REVIEW

On appeal, a Court of Appeals exercises *de novo* review on appeal from an order granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and considers the propriety of dismissing the action using the same standards that are to be used by the District Court. *See, e.g., Twombley v. Bell Atlantic Corp.*, 425 F.3d 99 (2nd Cir. 2005).

The test to be applied in ruling on a motion to dismiss is to assume all factual allegations contained with the complaint to be true, ignoring all conclusions of law, and determine whether the plaintiff has pleaded sufficient facts to make entitlement to relief plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

# SUMMARY OF THE ARGUMENT

The District Court's determination in this case that the alleged predicate acts, as pleaded by the Plaintiffs in their Second Amended Complaint, were not sufficiently related for RICO purposes was not in accord with the rulings of this Circuit in the cases of ***Banks v. Wolk***, 918 F.2d 418, 419, 420 (1990) and ***Swistock v. Jones***, 884 F. 2d 755 (1989). More specifically, in line with the holding of ***H.J. Inc. v. Northwestern Bell Telephone Company***, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the alleged acts in the Second Amended Complaint "have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics. Furthermore, the Plaintiffs in this case should be able to withstand a facial attack on their Complaint and have the opportunity to have their pattern allegations "threshed out" in discovery. Therefore, the Order of the District Court should be reversed and the case should be remanded and permitted to proceed.

# ARGUMENT

The District Court in this case determined that the alleged predicate acts, as pleaded by the Plaintiffs in the Second Amended Complaint, were not sufficiently related for RICO purposes and therefore the Court granted the Defendants' motions to dismiss the Complaint with prejudice. In order to so rule, the District Court simply ignored the relevant Supreme Court and Third Circuit precedents regarding the test for "relatedness" of predicate act in a RICO Complaint. This Court, in the case of *Banks v. Wolk*, 918 F.2d 418, 419, 420 (1990) stated:

> The amended complaint must be construed in the light most favorable to the plaintiff, and can be dismissed only if the plaintiff has alleged no set of facts upon which relief could be granted. *Ransom v. Marrazzo*, 809 F.2d, 220, 221-22 (3d Cir. 1987). We note that in RICO actions, "in many cases plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery." *Swistock v. Jones*, 884 F.2d 755, 758 (3d Cir. 1989).

This Court in addressing the standards governing RICO's pattern requirement relied on the seminal case for this subject, *H.J. Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) stating:

> In *H.J. Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court addressed the standards governing RICO's pattern requirement. The Court stressed that a pattern requires more than the commission of two or more predicate acts. A plaintiff must show also "that the racketeering acts are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* At -----, 109 S.Ct. at 2900 (emphasis in original). These are two separate

requirements, "though in practice their proof will often overlap." *Id.*

The test for "relatedness" is broad. Borrowing language from another statute, *H.J. Inc.* states that criminal acts are sufficiently related if they " 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.* at ----, 109 S.Ct. at 2901 (*quoting* Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575(e) (1982), *repealed* by Sentencing Reform Act of 1984, Pub.L. NO. 98-473, tit. II, §212(a)(2), 98 Stat. 1987); *see also Sedima, S.P.R.L. v. Imrex Co.* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). This statement remains our only guidance in this area.

How broadly should we interpret the "relatedness" requirement? This Court held in ***Swistock v. Jones***, 884 F. 2d 755 (1989), broadly indeed as there it is stated the following:

In *H.J. Inc.*, the Supreme Court stated, "[w]hether the predicates proved established a threat of continued racketeering activity depends on the specific facts of each case." 109 S.Ct. at 2902. *See also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.* 742 F.2d 786, 790 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) (requirements for pleading a RICO enterprise are minimal). Although the Court in *H.J. Inc.* did not explicitly hold that the existence of a RICO pattern was a jury question, the Court held that the district court had improperly dismissed plaintiffs' RICO claim because "a threat of continuity of racketeering activity *might be established at trial* by showing that the alleged bribes were a regular way of conducting Northwestern Bell's ongoing business." 109 S.Ct. at 2906 (emphasis added).

We do not agree, as plaintiffs appear to argue, that no RICO complaint may be dismissed at the pleading stage for failure to state a claim as to pattern. It does appear, however, that in many

cases plaintiffs will be able to withstand a facial attack on the complaint and have the opportunity to have their pattern allegations threshed out in discovery. It may be that many of these issues will then be susceptible to resolution via summary judgment.

In analyzing relatedness of the numerous predicated acts alleged in the Second Amended Complaint, the District Court appeared to operate under a paradigm that its object was to determine what the differences were between the various predicate acts. It is posited by the Appellants in this case that these various acts should be analyzed under a paradigm that determines what they have in common as opposed to what are their differences.

A. **The four matters alleged in the Second Amended Complaint have the same or similar purposes, results, participants, methods of conviction and are not isolated events.**

First of all, the four matters set forth in the Second Amended Complaint have the same participants. Most significantly, the Defendant Lamancuso. In the Russo matter it was the Defendant Lamancusa who was at the scene assisting in the search of automobiles and participating in Robert Luptak's arrest. (Appendix Volume II page 47 ¶41). It was the Defendant Lamancusa who spoke with Luptak at the holding cell after Luptak was arrested. (Appendix Volume II page 47 ¶44). It was Defendant Lamancusa who in his official capacity using the SUI seized numerous items including fifteen vehicles, $15,498 in bank wraps, a large amount of jewelry valued at approximately up to $100,000, Seven motorcycles and various other items

22

of property belonging to ACRO Motors and Plaintiff Russo. (Appendix Volume II, page 49-50 ¶60). It was the Defendant Lamancusa who engaged in a meeting with Luptak when he said he could make the charges disappear with the push of a pen. "I will do this for you if you just let me keep everything we confiscated." (Appendix Volume II, page 51 ¶65). It was the Defendant Lamancusa who wanted the Defendant to plant drugs or other contraband so that it would appear that the drugs were in possession of the targeted individuals: to set somebody up with a lot of assets. (Appendix Volume II, pages 52 ¶67). It was the Defendant Lamancusa who said, "If I don't hear from you I will take that as a no and I will show you what will happen at trial." (Appendix Volume II, page 14 ¶73).

With regard to the Whiting matter, it was the Defendant Lamancuso who held a meeting in his office with the business partners of Bryan Whiting. (Appendix Volume II, page 55 ¶93). It was the Defendant Lamancusa who accused Whiting of stealing money from the company and indicating that a large stack of papers on his desk proved that Whiting had a stolen money. (Appendix Volume II, page 56 ¶94). It was the Defendant Lamancusa who told Whiting that if he agreed to sell additional portions of his business and agreed to become a 1/3 partner that he, the Defendant Lamancusa, would shred the papers and not charge him. (Appendix Volume II, page 56 ¶95).

It was the Defendant Lamancusa who, in the process of conducting a search of Whiting's hotel, woke up Whiting at the New Castle Police Department and began to yell at Whiting saying he did not know what Whiting was up to or who he thought it was but the ball was in the Defendant Lamancusa's court and if Whiting cooperated he would be able to go home but if not he would go to jail. (Appendix Volume II, page 60 ¶132). Cooperation meant Whiting's wife selling her remaining portion of the roll-off company to the Defendant Lamancusa's associations Mimms and Porter for only $10,000 as opposed to its actual value of $165,000. (Appendix Volume II, page 62 ¶141).

With regard to Torry Argiro, he posted several times Facebook alleging that the Defendant Lamancusa was involved in public corruption. (Appendix Volume II, page 63 ¶150). Within one day, false evidence was planted in his vehicle. This evidence consisted of powder which the Defendant Ryhal said, "Just say its heroin to spice it up." (Appendix Volume II, page 66 ¶177).

Concerning the Foley matter, the Defendant Lamancusa was involved throughout. It was the Defendant Lamancusa who brought Taylor Foley into his office and informed her that if she worked for him as a Confidential Informant she could get her son back. (Appendix Volume II, page 68 ¶198). It was the Defendant Lamancusa who attempted to obtain sexual favors in addition to her working as a Confidential Informant. (Appendix Volume II, page 68 ¶201). It was the Defendant

Lamancusa who put his hand on Taylor Foley's hair and ran his hand all the way down her back to her buttocks before allowing her to leave. (Appendix Volume II page 68 ¶203). It was the Defendant Lamancusa who came to Foley's house, grabbed her and kissed neck all the way down to her inner thigh and made her delete text messages and threaten to refile charges if she did not stage messages and act interested. (Appendix Volume II, page 70 ¶219).

The SIU was deeply involved in the Russo matter. It was the SIU who placed illegal drugs in the 1978 Buick Electra. (Appendix Volume II page 46 ¶32). It was the SIU who confiscated the 1978 Buick Electra. (Appendix Volume II page 46 ¶34). It was a Confidential Informant engaged by the Defendant Lamancusa and the SIU to place illegal drugs at various locations so the Confidential Informant would have easy access to retrieve them unnoticed prior to meeting with Luptak. (Appendix Volume II, page 46 ¶35).

It was the SIU who brought Luptak into custody and participated in questioning him. (Appendix Volume II, page 48 ¶48). It was the SIU who executed a search of ACRO Motors on October 23, 2014. (Appendix Volume II page 49 ¶56). It was the SIU who met with Luptak when the Defendant Lamancusa explained that he wanted Luptak to plant drugs or other contraband so that it would appear the drugs were in the possession of the target individuals to set somebody up with lots of assets. (Appendix Volume II, page 52 ¶67).

On September 13, 2017 it was members of the SIU who conducted a search of Whiting's Hudson Suites Extended Stay. (Appendix Volume II, page 58 ¶112). It was members of the SIU who arrested Whiting and took him to the New Castle Police Station on September 13, 2017. (Appendix Volume II, page 59 ¶125).

It was the Defendant Richard Ryhal, a member of the SIU who was deeply involved in the entire Argiro matter.

The four matters under predicate acts in the Second Amended Complaint also had the same purposes and members of commission.

In the Russo matter, it was obviously the Defendant Lamancusa's purpose to obtain valuable property belonging to the Plaintiff Anna Russo by planting evidence and filing false charges against her son Robert Luptak. It was the Defendant Lamancusa's methodology to see to it that Luptak was arrested on false drug charges by the New Castle Police Department and then, attempted to get Luptak to give him everything that had been confiscated so that he could make the charges against Luptak disappear with "a push of the pen". The Defendant Lamancusa then proceeded to extend his methods of obtaining property by suggesting that Luptak plant evidence on other people that the Defendant Lamancusa targeted, "big guys with wealth."

The Defendant Lamancusa also submitted false criminal charges in Bryan Whiting matter. He falsely accused Whiting of stealing money from the roll-off

Case: 23-1820    Document: 11    Page: 29    Date Filed: 07/10/2023

company that Whiting owned with Mimms and Porter. The only evidence against Whiting was a "large stack of paper on the corner of his desk". If Whiting would sell additional portions of his business and become a 1/3 party, the Defendant Lamancusa would shred the papers and not charge him.

In the Russo matter, the fact that Russo's property was taken and she was the victim of extortion as opposed to Luptak who was the one being threatened or the fact that the Defendant Lamancusa was the one extorting valuable property for his associates Mimms and Porter and opposed to himself is not important. As noted in the *Banks* case, *supra*, it was stated by the *Banks* Court,

> Once the requisite connection with the RICO enterprise is shown, the fact that a defendant employed different associates for different predicate acts should not be of overriding significance. Rather, we focus on the alleged nature of the alleged criminal activity. *Cf. Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1168 (3d Cir. 1989) (focusing on fact that "the distinctive character of the unlawful activity set out was securities fraud.")

The Argiro matter also involved the same methods of commission. It involved filing false criminal charges based on false evidence. The black paint powder which the Defendant Ryhal stated, "just say it's heroin to spice it up" while taking Argiro into custody and keeping him in custody for months as punishment for exposing the Defendant Lamancusa's corruption in his Facebook posts, was the false, planted evidence.

Finally, in the Foley matter, the Defendant Lamancusa, in his usual method of commission, used his position to seek a familiar *quid pro quo*. The Defendant Lamancusa would use his position to get her son back if only she would accede to his sexual overtures.

**B.**    **The Second Amended Complaint alleges individual predicate acts within certain of the aforementioned "matters"**

The Second Amended Complaint not only alleges multiple related predicate acts among the four matters set forth in the Second Amended Complaint, the Second Amended Complaint also set forth individual predicate acts within several of these matters. For example, in the Russo matter, the victims were Anna Russo and her son Robert Luptak who were victimized by an illegal search and seizure of ACRO Motors. A second and separate incident involves a search of Robert Luptak's home, where multiple valuable items were seized, which had nothing to do with any drug transactions and were never returned. Fabricated criminal charges against Robert Luptak was the leverage used by the Defendant Lamancusa to attempt to obtain ownership of the property. Furthermore, the Russo matter sets forth two separate instances of planting false evidence in the way of illegal drugs. Once in the automobile search of ACRO Motors and then another in the search of Luptak's home.

Likewise, matters involving extortion of sexual favors from Tylor Foley involve separate acts committed by the Defendant Lamancusa to elicit sexual favors from his victim Taylor Foley.

In ruling that the alleged predicate acts were not sufficiently related, the District Court made the following statement, "These alleged predicate acts (**which, if proven to be true, are, of course, plainly disturbing violations of public trust**) do not involve the same purpose, results, participants or methods of commission and therefore, not sufficiently related for RICO purposes." (Appendix I, page 30). Of course, these predicate acts, if proven to be true are not only plainly disturbing, they are shocking. The Appellants in this case are merely seeking the opportunity to conduct discovery to "thresh out" these allegations.

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically, 18 U.S.C. §1962 is unusual in that Congress provided a civil remedy to sanction criminal behavior. RICO, is a relative of 42 U.S.C. §1983. §1983 provides a vehicle whereby private attorneys prosecute civil rights violations and, if they are successful, are awarded attorney's fees. Likewise Congress, in passing the RICO act provided that a successful plaintiff in a RICO action could be awarded attorney's fees, and, treble damages. Like §1983 it's as if Congress unleashed an army of private attorneys general to prosecute organized and complex crime.

29

Unlike federal and state prosecutors, private attorneys lack certain investigative tools at the prosecutor's disposal. More specifically, private attorneys lack the power of investigative grand juries and federal investigative agencies such as the Federal Bureau of Investigation and the Postal Inspection Service. The only significant investigative vehicle left to the private attorney is the discovery process. The ability to properly investigate the criminal behavior alleged in RICO actions can be successfully quashed by a well placed Federal Rule 12(b)(6) motion filed by a RICO defendant. By taking a constrained view of the relatedness requirement of the act and granting the 12(b)(6) motion, a Court halts discovery which would enable a worthy Plaintiff to "thresh out" his RICO allegations, thus defeating congressional intent.

## CONCLUSION

For the foregoing reasons, it is requested that this Court reverse the District Court's Order dismissing this case for failure to state a federal claim and remand for proceedings allowing the case to continue.

Respectfully submitted:

/s/ Alexander H. Lindsay, Jr.

Alexander H. Lindsay, Jr.
Pa. Id. No. 15088

# CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the United Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:   Anna Russo and Torry Argiro.

Signature: s/ *Alexander H. Lindsay, Jr.*
Name: Alexander H. Lindsay, Jr., Esquire
Attorney No.: 15088

Case: 23-1820   Document: 11   Page: 34   Date Filed: 07/10/2023

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.     This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

this document contains <u>6492</u> words,

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Word 2016 in Times New Roman, Font size 14

Respectfully submitted:

s/ *Alexander H. Lindsay, Jr.*
Alexander H. Lindsay, Jr., Esquire
Counsel for Anna Russo and Torry Argiro
Pa. I.D. No. 15088

## CERTIFICATE OF BAR MEMBERSHIP

I, Alexander H. Lindsay, Jr., am a member of the Bar of the United States Court of Appeals for the Third Circuit.

Respectfully submitted:

s/ *Alexander H. Lindsay, Jr.*
Alexander H. Lindsay, Jr., Esquire
Counsel for Anna Russo and Torry Argiro
Pa. I.D. No. 15088

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS

I certify that the text of the electronic brief is identical to the text in the paper copies of the brief.

Respectfully submitted:

s/ *Alexander H. Lindsay, Jr.*
Alexander H. Lindsay, Jr., Esquire
Counsel for Anna Russo and Torry Argiro
Pa. I.D. No. 15088

# CERTIFICATE OF VIRUS CHECK

I certify that a virus scan was performed on the electronic brief using

McAfee Virus Scan Version 8.8.010000 and no threats were found.


Respectfully submitted:


s/ *Alexander H. Lindsay, Jr.*

Alexander H. Lindsay, Jr., Esquire
Counsel for Anna Russo and Torry Argiro
Pa. I.D. No. 15088

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 23-1820

ANNA RUSSO and TORRY ARGIRO,
**Appellants,**
vs.
JOSHUA LAMANCUSA, individually and in
His capacity as LAWRENCE COUNTY
DISTRICT ATTORNEY; and RICHARD RYHAL,
individually and in his capacity as
SPECIAL INVESTIGATION UNIT DETECTIVE,
**Appellees.**

**APPENDIX**
**VOLUME I - PAGES 001 - 032**

**APPEAL FROM THE MEMORANDUM OPINION AND ORDER OF JUDGE
ROBERT J. COLVILLE, ENTERED ON APRIL 3, 2023 GRANTING
DEFENDANTS' MOTION TO DISMISS AND SUBSEQUENT ORDER
DISMISSING THE CASE WITH PREJUDICE**

Alexander H. Lindsay, Jr.
Pa. I.D. No.: 15088

THE LINDSAY LAW FIRM, P.C.
110 East Diamond Street, Suite 301
Butler, PA 16001
(724) 282-6600

# TABLE OF CONTENTS

Date Filed: 07/10/2023    Page: 39    Document: 11    Case: 23-1820

Volume I

Notice of Appeal (Lower Court No. 21-1891)....................................................001

Memorandum Opinion (Lower Court No. 21-891) ............................................002

Order Dismissing the Case with Prejudice (Lower Court No. 21-1891)............032

Certificate of Service ................................................................................Last

Volume II

Docket Entries (Lower Court No.  21-1891) .....................................................033

Second Amended Complaint (Lower Court No. 21-1891) ................................040

Amended Rico Case Statement (Lower Court No. 21-1891) ............................080

Defendant Lamancusa's Motion to Dismiss Plaintiffs' Second .......................090
Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and
Motion to Strike Pursuant to Rule 12(f) (Lower Court No. 21-1891)

Defendant Lamancusa's Brief in Support of Motion to Dismiss......................126
Plaintiffs' Second Amended Complaint Pursuant to
Fed. R. Civ. P. 12(b)(6) and Motion to Strike Pursuant to Rule 12(f)
(Lower Court No. 21-1891)

Plaintiffs' Brief in Response to Defendants' Motion to Strike and ...................147
Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant
to Fed. R. Civ. P. 12(b)(6) (Lower Court No. 21-1891)

Defendant Lamancusa's Reply Brief in Support of Motion to Dismiss ............173
Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and
Motion to Strike Pursuant to Rule 12(f) (Lower Court No. 21-1891)

Defendant Richard Ryhal's Motion to Dismiss Plaintiffs' Complaint ..............180
Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion
To Strike Pursuant to Federal Rule of Civil Procedure 12(f)

Defendant Richard Ryhal's Memorandum of Law in Support of.......................187

Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f)

Plaintiffs Brief in Response to Defendant Ryhal's Motion to ...........................204 Strike and Motion to Dismiss Plaintiffs' Second Amended Complaint

Defendant Richard Ryhal's Reply Brief in Support of Motion ........................219 to Dismiss Plaintiffs' Complaint Pursuant to Rule 12(b)(6) and Motion to Strike Pursuant to Rule 12(f)

Certificate of Service ......................................................................Last

Case: 23-1820   Document: 11   Page: 41   Date Filed: 07/10/2023

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANNA RUSSO and TORRY ARGIRO,** | ) | |
| | ) | **No.: 2:21-cv-1891** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Robert J. Colville** |
| v. | ) | |
| | ) | |
| **JOSHUA LAMANCUSA, individually and in** | ) | |
| **his capacity as LAWRENCE COUNTY** | ) | |
| **DISTRICT ATTORNEY; and RICHARD** | ) | |
| **RYHAL, individually and in his capacity as** | ) | |
| **SPECIAL INVESTIGATION UNIT** | ) | |
| **DETECTIVE,** | ) | |
| **Defendants.** | ) | |

### NOTICE OF APPEAL

Notice is hereby given that Plaintiffs ANNA RUSSO and TORRY ARGIRO, hereby

appeal to the United States Court of Appeals for the Third Circuit from the Memorandum

Opinion and Order of Court of Judge Robert J. Colville entered in this action on the 3rd day of

April, 2023, granting Defendant Joshua Lamancusa's Motion to Dismiss and Defendant Richard

Ryhal's Motion to Dismiss and subsequent Judgment Order dated April 3, 2023 marking the

case as closed.

Respectfully submitted:

THE LINDSAY LAW FIRM, P.C.,

s/Alexander H. Lindsay, Jr.
ALEXANDER H. LINDSAY, JR.
Pa. Id. No. 15088

110 East Diamond Street, Suite 301
Butler, Pennsylvania 16001
Phone: 724.282.6600
Fax:    724.282.2672
Email:michele@lindsaylawfirm.com

Date Filed: 07/10/2023   Page: 42   Document: 11   Case: 23-1820

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANNA RUSSO and TORRY ARGIRO,        )
                                    )   No. 2:21-cv-1891
        Plaintiffs,                 )
                                    )
    vs.                             )   Judge Robert J. Colville
                                    )
JOSHUA LAMANCUSA, individually and in )
his capacity as LAWRENCE COUNTY      )
DISTRICT ATTORNEY; and RICHARD       )
RYHAL, individually and in his capacity as
SPECIAL     INVESTIGATION     UNIT
DETECTIVE,

        Defendants.

### OPINION

Robert J. Colville, United States District Judge

Before the Court are the Motions to Dismiss of Defendants Joshua Lamancusa, individually and in his capacity as Lawrence County District Attorney (ECF No. 32) (hereinafter "Mr. Lamancusa"); and Richard Ryhal, individually and in his capacity as Special Investigation Unit Detective (ECF No. 45) (hereinafter "Mr. Ryhal"). The Motions have been fully briefed and are ripe for disposition.

### I.    Introduction and Factual Background

#### A. Procedural History

Plaintiffs filed their Complaint against Mr. Lamancusa in state court on November 29, 2021. (ECF No. 1). Mr. Lamancusa filed a Notice of Removal to this Court on December 29, 2021. *Id.* Following the removal of the Complaint, Mr. Lamancusa filed a Motion to Dismiss and Motion to Strike (ECF No. 8). In response, Plaintiffs filed their First Amended Complaint against Mr. Lamancusa on March 11, 2022. (ECF No. 10). Then, following Mr. Lamancusa's filing of a

1

Motion to Dismiss and Motion to Strike the First Amended Complaint (ECF No. 14), Plaintiffs filed their Second Amended Complaint, with leave from the Court, on July 15, 2022, against both Mr. Lamancusa and Mr. Ryhal. (ECF No. 29).

On August 10, 2022, following the filing of the Second Amended Complaint, Mr. Lamancusa filed his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and a Motion to Strike pursuant to Fed. R. Civ. P. 12(f) (ECF No. 32) with a Brief in Support. (ECF No. 33). Plaintiffs filed their response on August 31, 2022. (ECF No. 34). Mr. Lamancusa then filed his Reply Brief on September 7, 2022. (ECF No. 35).

Then, on October 19, 2022, Mr. Ryhal filed his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Motion to Strike pursuant to Fed. R. Civ. P. 12(f). (ECF No. 45) with a Brief in Support. (ECF No. 46). Plaintiffs filed their response on December 16, 2022. (ECF No. 49. Mr. Ryhal filed his Reply Brief on January 6, 2023. (ECF No. 50).

### B. Factual Background

Plaintiffs' Second Amended Complaint alleges that Mr. Lamancusa and Mr. Ryhal violated the Racketeer Influenced and Corrupt Organizations Act ("RICO), specifically 18 U.S.C. § 1962(c), and deprived Plaintiffs of their property without Due Process in violation of 42 U.S.C. § 1983. Second Amended Compl. 33, 37. In the Second Amended Complaint, Plaintiffs set forth the following factual allegations relevant to the Court's consideration of the Motions at issue. As the Court is deciding motions to dismiss, the Court will accept all allegations in the Second Amended Complaint as true for purposes of these motions.

Plaintiffs allege that Mr. Lamancusa, the District Attorney of Lawrence County, "operates a racketeering enterprise, namely the Special Investigation Unit of the Lawrence County Drug Task Force ("Special Investigation Unit"), that engages in a pattern of racketeering activity,

Case: 23-1820   Document: 11   Page: 43   Date Filed: 07/10/2023

including extortion, Hobbs extortion, wire fraud, and interstate transportation in aid of racketeering, interfering with interstate commerce." Second Amended Compl. ₧ 1.  Plaintiff further alleges that Mr. Ryhal is a detective within the Special Investigation Unit. *Id.* at ₧ 8.

In support of these allegations, Plaintiffs allege various schemes committed against Plaintiffs and two non-plaintiffs, Bryan Whiting ("Mr. Whiting") and Taylor Foley ("Ms. Foley").

### *1. Allegations concerning Ms. Russo*

Ms. Russo is the mother of Robert Luptak ("Mr. Luptak") and the owner of ACRO Motors, an automobile dealership. Second Amended Compl. ₧ 29.  A confidential informant, employed by Mr. Lamancusa or the Special Investigation Unit, planted illegal drugs in a vehicle owned by Ms. Russo under the mistaken belief that it was owned by Mr. Luptak. *Id.* at ₧ 32-33. Said vehicle was seized by Mr. Lamancusa or the Special Investigation Unit without a search warrant and was never returned. *Id.* at ₧₧ 35-36. Then, on October 23, 2014, a search was conducted on Ms. Russo's property and various items were seized. *Id.* at ₧₧ 39, 40. Mr. Luptak was arrested on drug charges the same day and a search was also conducted of Mr. Luptak's home wherein additional property was seized. *Id.* at ₧₧ 42-43. Mr. Lamancusa and members of the Special Investigation Unit were involved in questioning Mr. Luptak and during their questioning, Mr. Lamancusa asked Mr. Luptak if he could take a look around ACRO Motors for stolen items. *Id.* at ₧₧ 48, 52, 55. Mr. Luptak agreed to the search even though he did not have the authority to consent without the agreement of Ms. Russo. *Id.* at ₧ 55. The Special Investigation Unit then conducted a search of ACRO Motors on October 23, 2014 and seized numerous vehicles and caused damage to Ms. Russo's property. *Id.* at ₧₧ 56, 60, 63. Ms. Russo spoke with Mr. Lamancusa later the same evening and Mr. Lamancusa informed Ms. Russo that he had the authority to search the property but never produced a search warrant. *Id.* at ₧₧ 57-59.

3

Case: 23-1820   Document: 11   Page: 45   Date Filed: 07/10/2023

At a later meeting between Mr. Lamancusa and Mr. Luptak, Mr. Lamancusa stated that he would make the charges disappear if Mr. Luptak allowed him to keep everything that was confiscated. *Id.* at ¶ 65. Mr. Lamancusa also explained that he wanted Mr. Luptak to plant drugs and other contraband on other individuals. *Id.* at ¶ 67. Mr. Luptak denied these offers. *Id.* at ¶¶ 66, 69. Mr. Lamancusa met with Mr. Luptak again prior to Mr. Luptak's trial and told Mr. Luptak to think about what he wanted to do. *Id.* at 72-73. Mr. Luptak went to trial and was convicted and sentenced to 11 ½ to 23 years in prison. *Id.* at ¶ 74.

The seized vehicles and property remained in the possession of the District Attorney's Office until June 25, 2019, when the vehicles were returned to Ms. Russo. *Id.* at 75-76, 83. The Court of Common Pleas of Lawrence County had previously ordered on March 2, 2018, that the thirteen vehicles be returned to Ms. Russo. *Id.* at ¶ 79. At the time of their return, the vehicles were in disrepair. *Id.* at 86.

### 2. *Allegations concerning Mr. Argiro*

Mr. Argiro was arrested on August 30, 2019, following his girlfriend, Cassandra Walsh's allegations that he assaulted her. Second Amended Compl. ¶¶ 152, 155. The arresting officers also believed that the powder coat paint in Mr. Argiro's vehicle, which he possessed due to his job painting motorcycle parts, was some type of illegal narcotic. *Id.* at ¶ 159-60. Mr. Argiro denied being a drug dealer when asked by officers but admitted to using drugs. *Id.* at ¶¶ 161-62. Mr. Argiro was later sent home, but the police retained his vehicle. *Id.* at ¶¶ 169-70.

Three days later, Mr. Argiro was told he could pick up his vehicle from the Union Township Police Barracks, but upon his arrival, Mr. Argiro was apprehended by Mr. Ryhal. *Id.* at ¶¶ 171-72. Mr. Ryhal informed Mr. Argiro that the powder coat paint in his vehicle tested positive for cocaine. *Id.* at ¶ 173. During Mr. Argiro's subsequent interrogation, an officer asked Mr.

4

Case: 23-1820     Document: 11     Page: 46     Date Filed: 07/10/2023

Ryahl what the powder coat paint should be called in the arrest warrant and Mr. Ryhal said heroin. *Id.* at ¶ 177.  Mr. Argiro was taken into custody and later released on bond and placed on house arrest which prevented him from working full time and ruined his credit score. *Id.* at ¶¶ 178, 181. Mr. Argiro took a plea due to threats of additional charges by Mr. Lamancusa. *Id.* at ¶¶ 183-84. Mr. Lamancusa and an associate of Mr. Lamancusa have continued to harass and threaten Mr. Argiro. *Id.* at ¶¶ 185-88.

### 3. *Allegations concerning Mr. Whiting*

Mr. Whiting was the owner of various businesses including a construction business, a long term stay hotel, and a roll-off business. Second Amended Compl. ¶ 90. Mr. Whiting suffered a traumatic brain injury in November of 2015 and decided to sell fifty percent of his roll-off business to businessmen James Mims ("Mr. Mims"), a friend of Mr. Lamancusa, and Allen Porter ("Mr. Porter"). *Id.* at ¶ 91, 110.

In December of 2015, Mr. Lamancusa spoke with the drivers of Mr. Whiting's roll-off business and implied that Mr. Whiting was breaking the law. *Id.* at ¶ 92. Mr. Lamancusa then held a meeting with Mr. Whiting, Mr. Whiting's attorney, Mr. Mims, and Mr. Porter in March of 2017 wherein Mr. Lamancusa accused Mr. Whiting of stealing money from the company. *Id.* at ¶¶ 93-94. Mr. Lamancusa told Mr. Whiting that if he agreed to sell additional portions of his business to Mr. Mims and Mr. Porter, then Mr. Lamancusa would not charge him. *Id.* at ¶ 95. Mr. Whiting did not agree and asked to speak with his attorney. *Id.* at ¶ 96. Following communications with Mr. Bonner, Mr. Whiting agreed to transfer the stock to Mr. Mims and Mr. Porter. *Id.* at ¶ 105. Mr. Bonner is an attorney affiliated with Mr. Whiting's attorney who was allegedly in communications with Mr. Lamancusa. *Id.* at ¶ 98. Mr. Whiting also transferred his remaining

5

shares to his wife. *Id.* at 106. His wife was further threatened by Mr. Mims and Mr. Porter that if she did not transfer the remaining shares, charges would be filed against Mr. Whiting. *Id.* at ¶ 107.

The Special Investigation Unit also conducted a search of the hotel owned by Mr. Whiting on September 13, 2017. Following the search, Mr. Whiting was arrested by the Special Investigation Unit and was transported to the police station by Mr. Ryhal. *Id.* at ¶¶ 125, 128. Mr. Ryhal asked other members of the Special Investigation Unit why Mr. Whiting was under arrest and was informed that Mr. Lamancusa directed that Mr. Whiting be arrested and brought in for questioning. *Id.* at ¶ 129. Mr. Whiting was later questioned by the Special Investigation Unit and Mr. Lamancusa on whether he knew anyone who sold drugs or if there were ever drugs sold and/or located in his hotel. *Id.* at ¶ 134. Mr. Whiting was then let go and told there would be no record of his arrest. *Id.* at ¶ 135.

Following her husband's arrest and additional threats by Mr. Mims and Mr. Porter, Mr. Whiting's wife sold her shares in the roll-off business to Mr. Mims and Mr. Porter. *Id.* at ¶ 139. Then, without notice to Mr. Whiting, his hotel was sold at a tax sale on September 29, 2017 to Mr. Mims who transferred the property to an LLC. *Id.* at ¶ 143. Mr. Whiting was never able to recover his personal belongings from the hotel. *Id.* at 148.

#### 4. *Allegations concerning Ms. Foley*

Ms. Foley was the witness to a murder in November of 2013 when she witnessed a Mr. Platt shoot a Mr. Hogue. Second Amended Compl. ¶189. She went to the police station to provide a statement but was beaten by police officers, charged with several crimes, and taken to a juvenile facility. *Id.* at ¶¶ 190-92. While she was in the juvenile facility, CYS (Children & Youth Services) took custody of her child and informed her that she would get her son back after she testified against Mr. Platt and completed the necessary programs. *Id.* at ¶¶ 193-94. Ms. Foley testified

6

against Mr. Platt at his preliminary hearing, completed the programs, and was released from the juvenile facility in December of 2013. *Id.* at ¶ 196.

Following her release, Mr. Lamancusa met with Ms. Foley and asked her to work as a confidential informant with the promise her son would be returned to her if she accepted. *Id.* at ¶¶ 197-98. Mr. Lamancusa then told Ms. Foley how beautiful and smart she was and that if she did him a favor, he would do her a favor. *Id.* at ¶ 199-200. Ms. Foley believed that Mr. Lamancusa was attempting to extort sexual favors from her in addition to her working as a confidential informant and she informed him she was not interested. *Id.* at ¶¶ 201-02. Mr. Lamancusa then met with Ms. Foley again in April of 2014 and again made sexual advances towards her and offered his help. *Id.* at ¶¶ 203-05.

In February of 2015, Ms. Foley was arrested, and the District Attorney's office seized her car and some additional items that were never returned. Id. at ¶¶ 207-09. Following this arrest, Mr. Lamancusa began calling Ms. Foley and texting her asking her to cooperate and do him a favor or she would never see her son again. *Id.* at ¶¶ 210-13. Ms. Foley agreed to Mr. Lamancusa's requests in order to placate Mr. Lamancusa but had no intention of following through with his demands. *Id.* at ¶ 214. Mr. Lamancusa then dropped Ms. Foley's drug charges down to disorderly conduct and arranged for early termination of her probation. *Id.* at ¶ 215. Mr. Lamancusa then became angry when Ms. Foley declined to provide sexual favors and made unwanted advances towards Ms. Foley when he visited her. Id. at ¶219. Mr. Lamancusa also threatened to file charges if she did not act interested and stage text messages with him to prove she was indeed interested. *Id.* at ¶¶ 220-21. Then, in June of 2016, Mr. Platt's murder trial occurred, and Ms. Foley testified. *Id.* at ¶ 221. Following the trial, Ms. Foley's son was returned to her. *Id.* at 222.

7

Case: 23-1820   Document: 11   Page: 48   Date Filed: 07/10/2023

## II.    Legal Standard

### A. Motion to Strike

Rule 12(f) of the Fed. R. of Civ. P. provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4473228 at *3 (E.D. Pa. Sept. 28, 2012). However, 12(f) motions to strike are disfavored and infrequently granted, usually only where the allegations have no relevance to the controversy and may prejudice the parties. *Id.* To prevail on a 12(f) motion, "the moving party must demonstrate that 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or [that] the allegations confuse the issues.'" *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 560 (E.D. Pa. 2018) (alteration in original) (quoting *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428-29 (E.D. Pa. 2007)).

### B. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A

8

"formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

9

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.   Discussion

### A.   Motion to Strike

Both Mr. Lamancusa and Mr. Ryhal move to strike portions of Plaintiff's Second Amended Complaint that concern allegations related to Ms. Foley and Mr. Whiting. Lamancusa Br. in Supp. 8-12; Ryhal Br. in Supp. 4-5. Defendants' arguments to strike these portions of Plaintiffs' Second Amended Complaint will be addressed together as their arguments are almost identical and Mr. Ryhal has incorporated the arguments of Mr. Lamancusa in his motion to strike. *See* Ryhal Br. in Supp. 5.

First, Defendants argue that Ms. Foley and Mr. Whiting both previously brought their own lawsuits in the Western District of Pennsylvania against Mr. Lamancusa on the same factual basis as those detailed in Plaintiffs' Second Amended Complaint.[1] Lamancusa Br. in Supp. 9; Ryhal Br. in Supp. 5. Ms. Foley and Mr. Whiting's lawsuits have since been resolved and as such Defendants argue that reference to these facts in Plaintiffs' Second Amended Complaint prejudices

---

[1] Defendants argue and Plaintiffs confirm that Mr. Whiting and Ms. Foley previously brough their own federal lawsuits that have been litigated to their conclusions. Lamancusa Br. in Supp. 9; Ryhal Br. in Supp. 5; Pl. Br. in Opp'n to Lamancusa 9-10; Pl. Br. in Opp'n to Ryhal 6-7. Defendants argue that Mr. Whiting's case, brought under Civil Action No. 2:18-cv-1398, ended in a settlement agreement. Lamancusa Br. in Supp. 11. Further, Defendants argue that Ms. Foley's case, brought under Civil Action No. 2:18-cv-1397, resulted in Magistrate Judge Dodge issuing an Opinion granting summary judgment in favor of the Defendants. *Id.* at 9-10. Plaintiffs agree that a settlement agreement was reached in Mr. Whiting's matter and that summary judgment was entered in Ms. Foley's matter but disagree with Defendants' characterization of the importance of these facts. Pl. Br. in Opp'n to Lamancusa 9-10; Pl. Br. in Opp'n to Ryhal 6-7.

10

Case: 23-1820   Document: 11   Page: 51   Date Filed: 07/10/2023

Defendants and is an attempt to defame and embarrass them. Lamancusa Br. in Supp. 10-12; Ryhal Br. in Supp. 5. Further, Defendants argue that because Ms. Foley's lawsuit was decided in favor of Mr. Lamancusa on a motion for summary judgment, many of the factual allegations raised in the Second Amended Complaint pertaining to Ms. Foley are factually incorrect based on the statement of material facts that was filed with the motion for summary judgment in Ms. Foley's own lawsuit and the decision pertaining to that motion for summary judgment. Lamancusa Br. in Supp. 9-10; Ryhal Br. in Supp. 5. Defendants also argue that Plaintiffs' allegations concerning Ms. Foley are barred by collateral estoppel. *Id.* As to Mr. Whiting, Defendants argue that because Mr. Whiting's lawsuit ended in a settlement, Plaintiffs are breaching a confidential settlement agreement by including allegations concerning Mr. Whiting in their Second Amended Complaint. Lamancusa Br. in Supp. 11. Lastly, Defendants argue that the allegations concerning Mr. Whiting were raised in Plaintiffs' Complaint and Second Amended Complaint, but not Plaintiffs' First Amended Complaint and as such it was prejudicial for Plaintiffs to re-allege these facts. *Id.* at 10-11.

Plaintiffs argue the allegations pertaining to Mr. Whiting and Ms. Foley were included to demonstrate a pattern of racketeering; not to unfairly prejudice Defendants. Pl. Br. in Opp'n to Lamancusa 9-10; Pl. Br. in Opp'n to Ryhal 6-7. Plaintiffs further argue that while Ms. Foley's case was decided at summary judgment, Magistrate Judge Dodge made no determination as to the truth of Ms. Foley's allegations in that decision. Pl. Br. in Opp'n to Lamancusa 10; Pl. Br. in Opp'n to Ryhal 7. Lastly, Plaintiffs argue that Mr. Lamancusa was not a party to the settlement and therefore is not subject to any confidentiality requirements. Pl. Br. in Opp'n to Lamancusa 10; Pl. Br. in Opp'n to Ryhal 6.

11

To begin, the allegations pertaining to Ms. Foley and Mr. Whiting are relevant to Plaintiffs' RICO claims. *See Kisano Trade & Invest Ltd. v. Lemster*, 2011 WL 5593678, at *11 (W.D. Pa. 2011) (finding plaintiff's allegations concerning wire fraud against individuals other than plaintiff were relevant to plaintiff's RICO claims as "[p]laintiffs are not limited to the predicate acts directed at them [and] may allege multiple schemes"). Further, Plaintiffs are allowed to plead facts pertaining to non-plaintiffs in their Second Amended Complaint. *See Id.; see also Wilder v. Williams*, 1989 WL 67821, at * 3 (W.D. Pa. 1989) (holding that, taking the plaintiffs' allegations as true, the Court could consider lending institutions that were not plaintiffs as victims for RICO purposes when deciding a motion to dismiss).

Next, the Court acknowledges Defendants' arguments as to whether Plaintiffs' allegations as to Ms. Foley are false based upon the Opinion delivered by Magistrate Judge Dodge or are potentially barred by collateral estoppel. The Court further acknowledges Defendants' arguments that pleading allegations concerning Mr. Whiting may violate a confidential settlement agreement entered into by the parties. This being said, in order to determine whether these arguments are indeed true, the Court would need to consider numerous documents and facts outside the pleadings. This is not appropriate on a motion to strike as "motions to strike are decided on the pleadings alone." *Zolga v. Provident Life and Acc. Ins. Co. of America*, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009) (citing *Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 132 (E.D. Pa. 2007)).

Further, the Court notes that it is not currently convinced that collateral estoppel would apply in this case as Plaintiffs were not parties to the lawsuits previously brought by Mr. Whitting and Ms. Foley and there is no current showing that the Plaintiffs were in privity with Mr. Whitting and Ms. Foley. *See Nationwide Mut. Fire Ins. Co. V. George V. Hamilton, Inc.*, 571 F.3d 299, 312 (3d Cir. 2009) (findings "that privity requires a prior legal or representative relationship between

12

a party to the prior action and the nonparty against whom estoppel is asserted"). The Court is similarly unpersuaded that there currently exists any evidence that Plaintiffs are bound to a settlement agreement entered into by a nonparty to this action, especially considering Plaintiffs' argument that Mr. Lamancusa was also not a party to the settlement agreement.

Instead, the Court's duty on a motion to strike is to determine whether Defendants have met their burden of demonstrating that the allegations of Ms. Foley and Mr. Whiting fall into one of the categories in Rule 12(f). *Roamingwood Sewer & Water Association v. National Diversified Sales, Inc.*, 509 F. Supp. 3d 198, 204 (M.D. Pa. 2020). This means, Defendants must demonstrate that the allegations are either redundant, immaterial, impertinent, or scandalous. *See* Fed. R. Civ. P. 12(f).

> 'Immaterial' matter is that which 'has no essential or important relationship to [any] claim[s] for relief.' *Wagner v. Holtzapple*, 101 F. Supp. 3d. 462, 488 (M.D. Pa. 2015) (citing *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D.Del. 1995)). 'Impertinent' matter consists of 'statements that do not pertain, and are not necessary, to the issues in question.' *Id.* (citation omitted). And 'scandalous' matter is that which 'casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Id.* (citing *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988)).

*Roamingwood Sewer & Water Association*, 509 F. Supp. 3d at 198. (alterations in original).

The Court does not find that Defendants have met their burden of showing that the allegations of Ms. Foley or Mr. Whiting fall into one of the above four categories. If proven, these allegations are potentially relevant to Plaintiff's asserted RICO claims. Therefore, Defendants' Motions to Strike will be dismissed.

### B. Motion to Dismiss

#### *1. Statute of Limitations*

Both Mr. Lamancusa and Mr. Ryhal argue Plaintiffs' have failed to bring their causes of action for Counts I and II within the applicable statute of limitations and therefore, should be

13

dismissed. Lamancusa Br. in Supp. 12-14; Ryhal Br. in Supp. 7-9. Specifically, Defendants argue that Ms. Russo's RICO claim is outside of the applicable statute of limitations and that both Ms. Russo and Mr. Argiro's § 1983 claims are outside the applicable statute of limitations. *Id.* In general, the statute of limitations is raised as an affirmative defense in an answer to a complaint. *See* Fed. R. Civ. P. 8.   However, within the Third Circuit, a statute of limitations defense may be raised in a motion to dismiss pursuant to Rule 12(b)(6) where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal citation omitted).

### *a. Count I as to Ms. Russo*

A four-year statute of limitations applies for a RICO claim. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). The Third Circuit follows the "injury discovery" rule for determining when the statute of limitations accrues. *Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000). Under this rule, the Court "must determine when the plaintiffs knew or should have known of their injury." *Id.* This rule has both a subjective and objective prong. *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 250 (3d Cir. 2001). Under the subjective prong, the "claim accrues no later than when the plaintiffs themselves discover their injuries." *Id.*

Under the objective prong, the Court must determine whether the plaintiffs had "inquiry notice." *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (citing *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006)); *County of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 641 (D. N.J. 2007). This is a two-step process. First, the defendant must "show the existence of 'storm warnings,' meaning 'any information or accumulation of data that would alert a reasonable person to the probability' that

14

[the] defendant[] ha[s] engaged in wrongdoing." *Janiszewski*, 520 F. Supp. 2d at 641. Second, the plaintiffs must "show that they exercised reasonable due diligence and yet were unable to discover their injuries. *Id.*; *see* Mathews, 260 F.3d at 252. In other words, "'a plaintiff is on inquiry notice of her wounds when the circumstances would have led a reasonable person to discover them through due diligence.'" *Gary Miller imports, Inc., v. Doolittle*, No. 1:11-CV-178, 2020 WL 7027483, at \*9 (W.D. Pa. 2020) (quoting *Hawk Mountain LLC v. Ram Capital Group*, 689 Fed. Appx. 703, 706 (3d Cir. 2017)).

An injury under RICO, is an "actual monetary loss, i.e., an out-of-pocket loss." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000). In the Second Amended Complaint, Ms. Russo details her injuries as the confiscation of several vehicles and other items on October 23, 2014. Second Amended Compl. ¶¶ 39-40, 60. Ms. Russo also alleges injury from damages to her property caused during the search on October 23, 2014. *Id.* at 61. Lastly, Ms. Russo alleges loss of value to the confiscated vehicles that were returned to her in June of 2019. *Id.* at ¶ 76, 78.

The Court will first determine when Ms. Russo learned of her injury under the subjective prong. Defendants contend that Ms. Russo knew of her injuries on October 23, 2014, after the seizure of her property. Lamancusa Br. in Supp. 13-14; Ryhal Br. in Supp. 8. Ms. Russo argues she did not have notice of her injuries until April 2017 when she learned her property would not be returned to her. Pl. Br. in Opp'n to Lamancusa 12; Pl. Br. in Opp'n to Ryhal 8. Therefore, under the subjective prong, Ms. Russo argues she did not know of her injury until injury April of 2017. *Id.* However, the Court notes that the Second Amended Complaint does not include any allegations as to the date when Ms. Russo learned of her injury.

Turning to the objective prong of the analysis, even taking Ms. Russo's argument respecting when she subjectively learned of her injury as true, it is nonetheless well established

that Ms. Russo's claim accrues not only when Ms. Russo subjectively knew of her injury, but also when she should have known of her injury. Under the objective prong, Defendants argue that Ms. Russo should have been aware of the wrongdoing on October 23, 2014, when the subject property was seized. Lamancusa Br. in Supp. 13-14; Ryhal Br. in Supp. 8-9. In support of their position, Defendants cite to *Kadonsky v. New Jersey*, 188 Fed. Appx. 81, 85 (3d Cir. 2006), where the Third Circuit found that a plaintiff knew or should have known of his injury for purposes of a RICO claim at the time his money was seized. *Id.* However, in *Kadonsky*, the Third Circuit was deciding a motion for summary judgment and was presented evidence by the parties concerning the possible tolling of the statute of limitations, including the existence of storm warnings and the plaintiff's possible due diligence. 188 Fed. Appx. at 85-86. This Court can only dismiss the Second Amended Complaint based on a finding that the applicable statute of limitations has run if that finding is clear based on the allegations in the Complaint. The Court does not find that such clarity exists here. Further, Plaintiff raises arguments that there are questions as to whether her statute of limitations has been tolled due to her due diligence in pursuing her RICO claim. Pl. Br. in Opp'n to Lamancusa 13; Pl. Br. in Opp'n to Ryhal 9.

As Defendants have failed to identify "storm warnings" that served to notify Ms. Russo of her injury, the Court finds that it cannot hold that it is apparent from the face of the Second Amended Complain that Ms. Russo's RICO claim is untimely. Further, although Ms. Russo has plead no specific facts as to her exercise of due diligence to discover her injuries the Court will not place the burden on Ms. Russo "to plead around the statute of limitations defense." *See Germinaro v. Fidelity Nat. Title Ins. Co.*, 107 F.Supp.3d 439, 452 (W.D. Pa. 2015). Therefore, Defendants' motions to dismiss Ms. Russo's RICO claim based on the statute of limitations is

16

denied, although Defendants may, if warranted, raise statute of limitations as an affirmative defense.

### b. Count II

The statute of limitations applicable to a § 1983 claim is two years. *Cruz v. SCI-SMR Dietary Services*, 566 Fed. Appx. 158, 160 (3d Cir. 2014). A plaintiff's § 1983 claim accrues "on the date [the plaintiff] knew or had reason to know of the injury which is the basis of his action." *Syre v. Com.*, 662 F. Supp. 550, 553 (E.D. Pa. 1987).

### i. Ms. Russo's § 1983 Claim

Defendants argue that Ms. Russo knew or had reason to know of her injury on October 23, 2014. Lamancusa Br. in Supp. 13; Ryhal Br. in Supp. 9. Ms. Russo has failed to respond to Defendants' arguments on this point. However, Ms. Russo's injury for purposes of her § 1983 claim is, seemingly, identical to her injury for her RICO claim as the injury arises out of the same conduct. In her Briefs in Opposition, Ms. Russo admits that she learned of her injury concerning the seizure of her vehicle in April of 2017. Pl. Br. in Opp'n to Lamancusa 12; Pl. Br. in Opp'n to Ryhal 8. Therefore, even if the Court were to give Ms. Russo the benefit of the doubt that she did not learn of her injury until April of 2017, Ms. Russo's § 1983 claim would still be untimely as it accrued in April of 2019. Because Ms. Russo did not file her Complaint until November 29, 2021, *see* ECF No. 1, Ms. Russo's § 1983 claim is untimely unless the statute of limitations is tolled.

Here, the only argument Ms. Russo raises is that she was subject to an ongoing seizure. *Id.*; Pl. Br. in Opp'n to Ryhal 9. Although not explicitly stated, Ms. Russo appears to be relying on the continued violation doctrine.

> Under that doctrine, "'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.'" *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d

17

Cir. 2001)). However, "'a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.'" *Id.* (quoting *Weis-Buy Servs., Inc., v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005)). Thus, a court must consider: "(1) whether the violations were related in subject matter and (2) whether the acts were recurring." *Bennett v. Susquehanna Cnty. Children & Youth Servs.*, 592 Fed.Appx. 81, 84 (3d Cir. 2014) (citing *Cowell*, 263 F.3d at 293).

*Akan v. Summers*, 2:17-cv-00089, 2017 WL 6026433, at \*4 (W.D. Pa. 2017).

Here, the original violation was the seizure of vehicles and additional items from Ms. Russo's properties. Ms. Russo alleges that because some of the vehicles and property have not been returned to her, there is an ongoing seizure. Pl. Br. in Opp'n to Lamancusa 12; Pl. Br. in Opp'n to Ryhal 9. However, the actions of not returning seized property are not continuing violations and are instead continued ill effects from the original seizure in this case. *See MacNamara v. Hess*, 67 Fed. Appx. 139, 144 (3d Cir. 2003) (holding "the defendants failure to return plaintiff's records . . . as well as their continued possession of copies of some of the records, may be ill effects of the original seizure, but they do not amount to continuing unlawful acts"); *see also Akan*, 2017 WL 6026433, at \* (holding there was no continued violation where the only act was the seizure of the defendant's DNA and the continued possession of the defendant's DNA was only an "ill effect stemming from the original seizure"); *see also Johnson v. Cullen*, 925 F. Supp. 244, 250 (D. Del. 1996) (holding that a defendant's continued seizure of the plaintiff's property was not a continuing violation for statute of limitations purposes and the plaintiff's claims accrued based on the original seizure date); *see also Shannon v. Recording Industry Ass'n of America*, 661 F. Supp. 205, 211 (S. D. Ohio 1987) ("The fact that defendants retained the seized property is merely a consequence of the alleged illegal seizure and any injuries sustained by plaintiffs stem from that single unlawful act."). Therefore, Ms. Russo's statute of limitations for her § 1983 claim was not tolled by the "ongoing seizure" of her property.

18

Case: 23-1820    Document: 11    Page: 59    Date Filed: 07/10/2023

Further, Plaintiffs have submitted no arguments or pointed to any allegations that support a finding that Ms. Russo's statute of limitations should be tolled for any other reasons. Generally, for a § 1983 claim, state tolling principles apply unless they "contradict federal law or policy," and then federal equitable tolling principles will apply.[2] Plaintiffs have made no arguments that Ms. Russo's statute of limitations is tolled under Pennsylvania law and have instead focused their argument on the idea of an ongoing seizure. To be safe, the Court, however, will determine if the statute of limitations is tolled under Pennsylvania law based on the allegations and arguments raised by Plaintiffs. Under Pennsylvania law, the statute of limitations is generally tolled under either the discovery rule or based on fraudulent concealment. Under the discovery rule, the "statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (citing *Debiec v. Cabot Corp.*, 352 f.3d 117, 119 (3d Cir. 2003)). The Court finds that the discovery rule does not apply as Plaintiffs conceded in their Reply Brief that Ms. Russo was aware of her injury in April of 2017. The Court further finds that Plaintiffs have raised no allegations that would support tolling the statute of limitations based on fraudulent concealment. Lastly, the Court is aware of no such case, and Plaintiffs have pointed to no such case, where a Pennsylvania court has tolled the statute of limitations based on similar circumstances to this case. As such Ms. Russo's § 1983 claim is untimely, and the Court will dismiss Count II against Ms. Russo.

---

[2] Plaintiffs have made no assertions that Pennsylvania law conflicts with federal law or policy in order for federal equitable tolling to apply. The Court, however, notes that even if such argument was raised, the Court need not determine whether Pennsylvania law conflicts with federal law or policy because the federal equitable tolling principles would not apply under these circumstances. Federal equitable tolling principles are applicable where "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Hvizdak v. U.S.*, 2015 WL 5098745, at *4 (W.D. Pa. Aug. 31, 2015) (quoting *Santos ex. Rel. Baeto v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)). There are no allegations or arguments by Plaintiffs that would support a finding that one of the three principles above applies to Ms. Russo.

19

Further, with respect to the passing of the statute of limitations period for Ms. Russo's §
1983 claim, the inadequacies in Ms. Russo's Second Amended Complaint are unlikely to be
resolved by supplemental pleadings and, as such, this claim will be dismissed with prejudice.

### ii.  Mr. Argiro's § 1983 Claim

Mr. Argiro's injury consists of the seizure of his jeep and lost wages as a result of the
allegations made against him and his extended house arrest.  Second Amended Compl. ₱ 271.
Defendants argue that Mr. Argiro's jeep was seized in August of 2019 and that he was placed on
house arrest in December of 2019.  Lamancusa Br. in Supp. 14; Ryhal Br. in Supp. 9.  Plaintiffs
make no arguments concerning the date of Mr. Argiro's house arrest but concedes that the jeep
was seized in August of 2019 and that based on that date Mr. Argiro's claim expired prior to the
November 29, 2021 filing of the Complaint in this matter.  Pl. Br. in Opp'n to Ryhal 10.  However,
Plaintiffs argue that because Defendants' threats to arrest Mr. Argiro and to seize his jeep
continued into 2021, the Complaint is not untimely.  *Id.*

As stated above, in order for Mr. Argiro's claims to be timely, the statute of limitations
must be tolled under the continuing violation theory or under Pennsylvania law.  Plaintiffs again
appear to argue that Mr. Argiro's statute of limitations was tolled under the continuing violation
theory.  To toll the statute of limitations based on a continuing violation theory, Mr. Argiro must
prove that any continuing violation is occasioned by continual unlawful acts, not continual ill
effects from an original violation.  *Montanez*, 773 F.3d at 481.  Here, the continuing acts plead by
Mr. Argiro are that he was subject to harassment by Mr. Ryhal and an associate of Mr. Lamancusa.
Second Amended Compl. ₱₱ 185-188.  In the Second Amended Complaint, Mr. Argiro pleads that
the details of this harassment are included in his affidavit; however, the Court is not in possession
of any such affidavit.  *Id.*  Mr. Argiro explains in his Response Briefs that this harassment included

20

threats of arrest and threats to seize Mr. Argiro's jeep. Pl. Br. in Opp'n to Ryhal 10. Based upon his reference to an affidavit and his argument respecting continuing threats, the Court will need to determine if it is beneficial to grant leave to Mr. Argiro to amend his allegations on these grounds.

The Court holds that Mr. Argiro's statute of limitations is not tolled under the continuing violation theory. Any threats made concerning the arrest of Mr. Argiro are not relevant to his § 1983 claim for deprivation of property because an arrest is not actionable under § 1983 and the threat of arrest cannot be considered to determine whether his § 1983 claim is within the applicable statute of limitations. Further, the threat to seize Mr. Argiro's jeep is not actionable under § 1983 because "[m]ere threats and verbal harassment, without more, are not actionable under § 1983." *Hodgin v. Agents of Montgomery Cnty.*, 619 F. Supp. 1550, 1553 (E.D. Pa. 1985) (citing *Ricketts v. Derello*, 574 F. Supp. 645, 647 (E.D. Pa. 1983)). Therefore, the threat to seize Mr. Argiro's jeep cannot be considered a continuing violation even if Mr. Argiro had properly pled this fact in his Second Amended Complaint.

The Court further holds that Mr. Argiro's statute of limitations is not tolled under Pennsylvania law. As stated above, under Pennsylvania law, the statute of limitations can be tolled under the discovery rule or based on fraudulent concealment. Under the discovery rule, the "statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (citing *Debiec v. Cabot Corp.*, 352 f.3d 117, 119 (3d Cir. 2003)). The Court holds that Mr. Argiro's claim is not tolled under the discovery rule as Plaintiffs conceded that Mr. Argiro's injury occurred in April of 2019 and his claim was untimely based on that fact. Further, Plaintiffs have not alleged or argued that Mr. Argiro was not aware of his injury in April of 2019. Next, the Court also finds that Mr. Argiro's claims are not tolled under

Case: 23-1820      Document: 11      Page: 62      Date Filed: 07/10/2023

21

fraudulent concealment as Plaintiff's have presented no arguments or allegations that support such a finding. Lastly, the Court is aware of no such case, and Plaintiffs have pointed to no such case, where a Pennsylvania court has tolled the statute of limitations based on similar circumstances to this case.

As Plaintiffs have failed to allege any facts that support a finding that the statute of limitations should be tolled and have failed to raise any arguments in their briefing that the statute of limitations should be tolled, the Court finds that the statute of limitations had accrued for Mr. Argiro's § 1983 claim prior to the filing of the Complaint in this matter.[3]  As such, Count II is dismissed as to Mr. Argiro. Further, the Court finds that any amendment to the Second Amended complaint would be futile and dismisses count II with prejudice as to Mr. Argiro.

### 2.  Failure to State a Claim

Defendants have also moved to dismiss Plaintiffs claims on the grounds that they failed to state a cause of action as to Counts I and II. As the Court dismissed Count II with prejudice to both Ms. Russo's and Mr. Argiro's §1983 claims above, *see supra* B.1.b., the Court will address only whether Plaintiffs have stated a cause of action as to Count I.[4]

---

[3] As with Ms. Russo's § 1983 claim, Plaintiffs have made no assertions that Pennsylvania law conflicts with federal law or policy in order for federal equitable tolling to apply. The Court, however, notes that even if such argument was raised, the Court need not determine whether Pennsylvania law conflicts with federal law or policy because the federal equitable tolling principles would not apply under these circumstances. Federal equitable tolling principles are applicable where "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Hvizdak v. U.S.*, 2015 WL 5098745, at *4 (W.D. Pa. Aug. 31, 2015) (quoting *Santos ex Rel Baeto v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)). It is clear that there are no allegations or arguments from Plaintiff that support a finding that the statute of limitations should be tolled under the first or third principle. Further, while Mr. Argiro has raised allegations of threats and harassments, the Third Circuit is clear that threats and harassment are not enough to toll the statute of limitations under the second principle. *See Kach v Hose*, 589 F.3d 626, 643-45 (3d Cir. 2009) (holding that a plaintiff's statute of limitations accrued in October of 2001, and it was not tolled by the fact that she was held captive for ten years and not released until March of 2006).

[4] The Court will also not address Mr. Lamancusa and Mr. Ryhal's arguments that Count II is barred by *Heck v. Humphrey* as Count II has been dismissed with prejudice. *See* Lamancusa Br. in Supp. 15; *see also* Ryhal Br. in Supp. 10-11.

22

In Count I, Plaintiffs allege that Defendants' conduct violated 18 U.S.C. § 1962(c) of

RICO. Under § 1962(c), it is unlawful "for any person employed by or associated with any

enterprise engage in, or the activities of which affect, interstate or foreign commerce, to conduct

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity." 18 U.S.C. § 1962. Therefore, "[t]o establish a RICO violation under §

1962(c), plaintiffs must prove (1) the conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity. *Dongelewicz v. PNC Bank Nat'l. Ass'n*, 104 Fed. Appx. 811, 816-817 (3d

Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

### *a. Mr. Ryhal's Motion to Dismiss*

The Court will begin with addressing the individual arguments raised by Mr. Ryhal in his

Motion to Dismiss. The Court notes that, for the most part, Mr. Ryhal has duplicated and adopted

the arguments made by Mr. Lamancusa in his Motion to Dismiss. Mr. Ryhal raises an additional

argument that the twelve paragraphs in the Second Amended Complaint containing allegations

related to him are not enough to assert a compensable claim against him. Ryhal Br. in Supp. 9-10.

The Court notes for reference that the Second Amended Complaint is 271 paragraphs long. *See*

Second Amended Compl. Mr. Ryhal argues that the only paragraphs containing allegations that

reference him are the following:

1. Paragraph 8-Defendant Special investigation Unit Detective Richard Ryhal is an
adult individual residing in Lawrence County with a professional address of 430
Court Street, New Castle, Pennsylvania, 16101, and at all material times acted
under color of law.

2. Paragraph 9-Detecitve Richard Ryhal is sued in his official capacity for
declaratory and injunctive relief and in his individual capacity for damages.

3. Paragraph 127-Another officer, Richard Ryhal, then arrived at the scene at 11:00
a.m. while Mr. Whiting was standing with Officers Costa and Mr. Bouye.

23

4. Paragraph 128-Officer Costa informed Officer Ryhal that Mr. Whiting was under arrest and instructed him to take Mr. Whiting to the police station.

5. Paragraph 129-Officer Ryhal inquired as to what Mr. Whiting was being arrested for and Mr. Costa responded that Mr. Lamancusa directed that Mr. Whiting be arrested and to take Mr. Whiting to a holding cell to all [sic] Mr. Lamancusa to interrogate Mr. Whiting.

6. Paragraph 130-While on the ride, Officer Ryhal inquired as to why Mr. Whiting was under arrest and when Mr. Whiting indicated that he did not know for what he was arrested for, Officer Ryhal indicated that he would like to know why he was transporting Mr. Whiting and for what he had been arrested.

7. Paragraph 172-Upon arriving at the Union Township Police Barracks Mr. Argiro was apprehended by Richard Ryhal.

8. Paragraph 173-Officer Ryhal read Mr. Argiro his Miranda rights and informed him that the powder coat pain tested positive for narcotics.

9. Paragraph 175-Despite requesting counsel, Officer Ryhal continued to question Mr. Argiro and he refused to answer his questions.

10. Paragraph 177-Officer Wickline asked Officer Ryhal what he should call the black paint, and Officer Ryhal responded "just say its heroin to spice it up."

11. Paragraph 185-Since that time, Mr. Argiro has been harassed by Richard Ryhal.

12. Paragraph 187-An associate of Joshua Lamancusa and an ex-corrections officer called Mr. Argiro and informed him that if he pursued his allegations of harassment against Mr. Ryhal that he would kill Mr. Argiro's girlfriend in front of him and then kill Mr. Argiro.

Ryhal Br. in Supp. 3 (quoting Second Amended Compl., ¶¶ 8-9, 127-30, 172-73, 175, 177, 185. 187). Further, Mr. Ryhal argues that Count I does not include any "reference to [Mr.] Ryhal's alleged actions and/or inactions and [includes] no suggestion that [Mr.] Ryhal violated RICO." *Id.* The Court notes that Mr. Ryhal does not raise arguments specifically addressing this point beyond the conclusory arguments detailed above. This being said, Mr. Ryhal raises an additional argument, elsewhere in his motion, that Plaintiffs have failed to allege a pattern of racketeering activity to support their RICO clam. *Id.* at 13-15. In support of this argument, Mr. Ryhal argues

24

Case: 23-1820   Document: 11   Page: 65   Date Filed: 07/10/2023

that the allegations against Mr. Ryhal only demonstrate that he was "involved in the valid arrest

of Argiro; but had absolutely no involvement in the Russo allegations . . . [and a]s such, there is

no evidence that [Mr. Ryhal] was involved in any pattern of racketeering. *Id.* at 14. Mr. Ryhal's

remaining arguments will be addressed below in conjunction with the arguments raised by Mr.

Lamancusa.

Plaintiffs argue that the "allegations in the Second Amended Complaint, as they relate to

[Mr.] Ryhal reflect the manner in which Lamancusa utilized his staff to implement his on going

[sic] extortion." Br. in Opp'n to Ryhal 2-3.

While Mr. Ryhal's arguments on these grounds are brief, the Court assumes that Mr. Ryhal

is arguing that Plaintiffs have failed to plead any facts that Mr. Ryhal was participating in the

enterprise or involved in the commission of the predicate acts. The District of New Jersey quoting

the Supreme Court in *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), provides that

> [t]o survive a Rule 12(b)(6) motion to dismiss [Plaintiffs'] Section 1962(c) claim,
> Plaintiffs need only allege that the . . . Defendants 'participated in the operation or
> management of the relevant enterprise.' *Reves*, 507 U.S. at 184, 113 S.Ct. 1163.
> Thus, to participate directly or indirectly in the conduct of an enterprise's affairs
> for purposes of § 1962(c), one need only play "*some part* in directing the
> enterprise's affairs." *See id.* at 179, 113 S.Ct. 1163 (emphasis added). It is not
> necessary for Plaintiffs to plead that the . . . Defendants had primary responsibility
> for operating and managing the affairs of the RICO enterprise. *Id.*
>                                         * * *
> Plaintiffs must also allege facts indicating that the defendant participated in the
> operation or management through a pattern of racketeering activity (i.e., if his
> management participation is conducted via a pattern of criminal acts) and
> demonstrate a nexus between the person and the unlawful conduct in the affairs of
> an enterprise. *United States v. Parise*, 159 F.3d 790, 796 (3d Cir. 1998).

*South Broward Hos. Dist. V. MedQuist Inc.*, 516 F.Supp.2d 370, 391-92 (D. N.J. 2007).

The Court finds that the allegations against Mr. Ryhal are sufficient to survive a motion to

dismiss on these grounds. Plaintiffs sufficiently plead that Mr. Ryhal was involved in the

enterprise's affairs because Plaintiffs plead that he is a Detective in the Special Investigation Unit

25

Case: 23-1820   Document: 11   Page: 66   Date Filed: 07/10/2023

and was involved in the arrest of Mr. Whiting and Mr. Argiro. Further, reading the Second Amended Complaint in the light most favorable to Plaintiffs, Plaintiffs have sufficiently plead a nexus between Mr. Ryhal and the unlawful conduct of the enterprise. Plaintiffs plead that as part of the racketeering scheme, Mr. Lamancusa used the enterprise – the Special Investigation Unit of which Mr. Ryhal was a Detective – to defraud and extort individuals by filing false criminal charges against them, fabricating evidence against them, and seizing their property. Second Amended Compl. ¶¶ 10, 14-16. Plaintiffs further plead that Mr. Ryhal was involved with the arrest of two of these individuals and was involved in the fabrication of evidence against Mr. Argiro. Therefore, on these grounds, Plaintiffs have plead sufficient allegations to allege that Mr. Ryhal was involved in the operation or management of the relevant enterprise and therefore, Mr. Ryhal's Motion to Dismiss is denied on these grounds.

The Court will address Mr. Ryhal's remaining arguments in conjunction with the arguments raised by Mr. Lamancusa in his motion to dismiss as the arguments are substantively identical and involve the same analysis.

### b. Defendants' Joint Arguments

Defendants do not argue that Plaintiffs' Second Amended Complaint fails on all four prongs of a RICO claim; instead, Defendants argue only that Plaintiffs failed to plead a pattern of racketeering activity. As such, the Court, for the purposes of these motions only, will assume that Plaintiffs have adequately plead the remaining elements of a § 1962(c) violation.

A pattern of racketeering activity "requires at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). Further, to establish a pattern of racketeering activity, the two predicate acts must be related and "amount to, or threaten the likelihood of, continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 229 (1989). Plaintiffs

26

allege the predicate acts of theft by extortion, theft by unlawful taking, robbery, and institutional sexual assault. RICO Case Statements of Russo and Argiro, ECF Nos. 16, 30. Extortion and robbery are predicate acts recognized by 18 U.S.C. § 1961.

Defendants do not address whether Plaintiffs have plead facts that show their alleged predicate acts amount to continued criminal activity, instead, they only argue Plaintiffs have failed to plead facts that show the alleged predicate acts are related. Further, Defendants do not argue that Plaintiffs failed to plead elements sufficient to establish the underlying predicate acts, and as such, the Court will not enter into an analysis on this point.

Related acts are "acts that have the same or similar purposes, results, participants, victims, methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240.

Defendants argue that the pleadings concerning Ms. Russo, Mr. Argiro, Ms. Foley, and Mr. Whiting "have nothing to do with each other." Lamancusa Br. in Supp. 18; Ryhal Br. in Supp. 14. They argue that the predicate acts are "not part of a scheme for similar purposes, do not have similar results, do not involve similar participants or victims or use the same methods of commission to set forth a pattern." *Id.* Instead, Defendants argue the allegations only demonstrate the actions of a District Attorney prosecuting criminal matters. *Id.* Specifically, Defendants argue that the predicate acts are not related because the allegations concerning Ms. Russo concern extortion of her son and not extortion against Ms. Russo herself. *Id.* at 19; Ryhal Br. in Supp. 14-15. Further, Defendants point to the lack of similarity between the allegations involving Mr. Whiting and Ms. Foley because these allegations do not include any facts that either Mr. Whiting or Ms. Foley were extorted. Lamancusa Br. in Supp. 19; *see* Ryhal Br. in Supp. 15 (adopting the arguments of Lamancusa). Lastly, Defendants argue that the alleged "racketeering" individuals

27

involved are not the same as Mr. Ryhal is only mentioned in the allegations against Mr. Argiro and not against Ms. Russo. *Id.* at 19; Ryhal Br. in Supp. 15.

Plaintiffs argue that the allegations show that Mr. Lamancusa targeted victims by presenting them with plea agreements that would allow the victims to plead guilty to lesser charges in exchange for money, property, and/or sexual favors. Pl. Br. in Opp'n to Lamancusa 15; Pl. Br. in Opp'n to Ryhal 12. Plaintiffs further argue that they have presented sufficient allegations that the same individuals were involved because they have alleged that Mr. Lamancusa and the Special Investigation Unit was involved in each of the predicate acts and that vulnerable victims were the targets of these predicate acts. Pl. Br. in Opp'n to Lamancusa 17; Pl. Br. in Opp'n to Ryhal 13-14.

The Court agrees with Defendants that Plaintiffs have failed to allege sufficiently related acts in order to state a claim for a RICO violation. Plaintiffs' arguments that the allegations culminate in one conclusive purpose that Mr. Lamancusa was targeting individuals by presenting them with plea agreements that would allow the victims to plead guilty to lesser charges in exchange for money, property, and/or sexual favors is simply not a reasonable summary of the allegations. The allegations concerning Ms. Russo deal with a situation where an individual, Mr. Luptak, was offered a lesser plea with the understanding that Mr. Lamancusa would keep the property seized from Ms. Russo. While the allegations concerning Mr. Argiro deal with a situation where Mr. Lamancusa and the Special Investigation Unit allegedly lied about the presence of drugs in Mr. Argiro's vehicle, asked him to serve as a confidential informant, and then years later (for reasons not stated in the allegations) trumped up the charges against Mr. Argiro forcing him to take a plea. While there is an allegation that Mr. Argiro's vehicle was seized as part of the investigation, there are no allegations that Mr. Argiro was offered a lesser plea deal in exchange

28

Case: 23-1820   Document: 11   Page: 70   Date Filed: 07/10/2023

for Mr. Lamancusa's ability to keep Mr. Argiro's vehicle or any other property. Next, as to Mr. Whiting, while there are allegations that Mr. Whiting was told charges would not be brought against him if he sold the shares in his roll-off business to Mr. Mims and Mr. Porter, there are no allegations that Mr. Lamancusa or the Special Investigation Unit benefited from the sale of Mr. Whiting's roll-off business. Further, while there are allegations that Mr. Whiting's hotel was sold in a tax sale, there are no allegations that Mr. Lamancusa or the Special Investigation Unit were involved in the tax sale of the hotel. Lastly, the allegations concerning Ms. Foley do not involve the extortion of property and instead involve allegations that Mr. Lamancusa asked Ms. Foley to work for him as a confidential informant and/or provide sexual favors with the understanding her son would be returned to her if she did.

These alleged predicate acts (which, if proven to be true, are, of course, plainly disturbing violations of public trust) do not involve the same purpose, results, participants, or methods of commission and are therefore, not sufficiently related for RICO purposes. There are no allegations that the purpose of all the alleged acts was to extort individuals for their property, money, or sexual favors. Accepting as true the facts alleged in the Second Amended Complaint, the purpose of Ms. Russo's scheme, and potentially Mr. Whiting's scheme, was to extort property. While the purpose of Ms. Foley's scheme was to extort sexual favors. Lastly, the purpose of Mr. Argiro's scheme is unclear to the Court outside of allegations that Mr. Argiro was asked to serve as a confidential informant and refused.[5] While the allegations suggest that all four schemes may have enriched Mr. Lamancusa personally and involved alleged instances of police misconduct, they all involved uniquely different purposes for analyses under RICO. The Court does not find that all four schemes had the same purpose and likewise, for the same reasons, does not find that the schemes

---

[5] Further, the Court is not convinced that a predicate act has been plead concerning Mr. Argiro and Ms. Foley, but this argument was not raised by Defendants.

29

had the same results. *See Hughes v. Halbach & Braun Industries, LTD.*, 10 F. Supp. 2d 491, 500 (W.D. Pa. 1998) (Where the Court held that the plaintiff had not plead related predicate acts as to the five alleged schemes where only two of the alleged schemes involved the same purpose and results. This was true even though the methods of commission were the same and the schemes involved some of the same participants.). Further, the schemes likewise do not involve the same participants. Ms. Foley's scheme involves CYS and Mr. Whiting's scheme involves unrelated individuals Mr. Mims and Mr. Porter. While it is true that Mr. Lamancusa and members of the Special Investigation Unit are allegedly involved in each scheme, "the fact that some of the schemes involve[] the same participants, does not mandate a finding of relatedness." *Id.* at 501.

As such, Plaintiffs have not alleged a common plan between the schemes and have not satisfied the relatedness requirement. Therefore, Plaintiffs have not stated a cause of action that Defendants violated 18 U.S.C. § 1962(c) and Count I will be dismissed against Defendants. As Plaintiffs have amended their Complaint twice already, the Court will not allow Plaintiffs to amend their Complaint for a third time. As such, Plaintiffs' Second Amended Complaint is dismissed with prejudice.

## IV.   Conclusion

For the reasons discussed above, the Court will grant Mr. Lamancusa and Mr. Ryhal's Motions to Dismiss with prejudice.

BY THE COURT:

*/s/ Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: April 3, 2023

cc: All counsel of record

30

Case: 23-1820   Document: 11   Page: 72   Date Filed: 07/10/2023

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANNA RUSSO and TORRY ARGIRO,     )
                             )   No. 2:21-cv-1891
       Plaintiffs,             )
                             )
    vs.                      )   Judge Robert J. Colville
                             )
JOSHUA LAMANCUSA, individually and in   )
his capacity as LAWRENCE COUNTY    )
DISTRICT ATTORNEY; and RICHARD    )
RYHAL, individually and in his capacity as   )
SPECIAL   INVESTIGATION   UNIT
DETECTIVE,

       Defendants.

### ORDER OF COURT

AND NOW, this 3rd day of April, 2023, upon consideration of Defendant Joshua

Lamancusa's, individually and in his capacity as Lawrence County District Attorney Motion to

Dismiss (ECF No. 32) and Defendant Richard Ryhal's, individually and in his capacity as

Special Investigation Unit Detective, Motion to Dismiss (ECF No. 45), and for the reasons set

forth in this Court's Opinion of the same date, it is hereby ORDERED that:

1) Defendant Joshua Lamancusa's Motion is GRANTED;

2) Defendant Richard Ryhal's Motion is GRANTED;

    Plaintiffs' Second Amended Complaint (ECF No. 29) is hereby dismissed with prejudice.

                        BY THE COURT:

                        */s/ Robert J. Colville*_____
                        Robert J. Colville
                        United States District Judge

cc: All counsel of record

Case: 23-1820    Document: 11    Page: 73    Date Filed: 07/10/2023

## CERTIFICATE OF SERVICE

I, Alexander H. Lindsay, Jr., Esquire, hereby certify that I have the 10th day of July, 2023, served a true and correct copy of ***Appellants' Brief and Appendix – Volumes I – Pages 001-032 & Appendix Volume II – Pages 033-225*** to be filed electronically with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Marie Milie Jones, Esquire – mjones@jonespassodelis.com
Maria N. Pipak, Esquire – mpipak@jonespassodelis.com
Francis D. Wymard, Esquire – fwymard@travelers.com

I further certify that within five (5) days, I mailed, postage prepaid, the required number of bound copies of the ***Appellants' Brief and Appendix – Volumes I – Pages 001-032 & Appendix Volume II – Pages 033 - 225*** to the Clerk of Courts.

THE LINDSAY LAW FIRM, P.C.

*s/ Alexander H. Lindsay, Jr.*
Alexander H. Lindsay, Jr.
Counsel for Anna Russo and Torry Argiro
Pa. I.D. No. 15088